UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DICK'S SPORT CENTER, INC.,

        Plaintiff,

                                      Civil No. 2:04-cv-74482

v.

                                      HON. GEORGE CARAM STEEH
RICHARD ALEXANDER, Director of        MAG. JUDGE VIRGINIA M. MORGAN
Industry Operations, Detroit Field Division
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

        Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

       This matter is before the court on defendant's motion for summary judgment as

to plaintiff Dick's Sports Center, Inc.'s claim for judicial review of the Director of Industry

Operations' September 30, 2004 decision to revoke Dick's federal firearms license.

**I.  Background**

       Plaintiff Dick's Sports Center, Inc. (hereinafter "Dick's) is a sporting goods store

operated and owned by the company's president, Richard Schmalzreid.  In 1990, Dick's

applied to the Bureau of Alcohol, Tobacco, and Firearms (hereinafter "ATF"), and

received a license to deal in firearms.

       Dick's was first inspected for compliance on June 2, 1992.  The inspector's report

cited numerous errors in record-keeping in the Acquisition and Distribution Book

(hereinafter "A & D Book") as well as errors in completing ATF Forms 4473.  The

inspector did not cite Dick's for any violations as a result of the initial inspection

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DICK'S SPORT CENTER, INC.,

       Plaintiff,

                                    Civil No. 2:04-cv-74482

v.

                                    HON. GEORGE CARAM STEEH
RICHARD ALEXANDER, Director of            MAG. JUDGE VIRGINIA M. MORGAN
Industry Operations, Detroit Field Division
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

       Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

       This matter is before the court on defendant's motion for summary judgment as
to plaintiff Dick's Sports Center, Inc.'s claim for judicial review of the Director of Industry
Operations' September 30, 2004 decision to revoke Dick's federal firearms license.

**I. Background**

       Plaintiff Dick's Sports Center, Inc. (hereinafter "Dick's) is a sporting goods store
operated and owned by the company's president, Richard Schmalzreid.  In 1990, Dick's
applied to the Bureau of Alcohol, Tobacco, and Firearms (hereinafter "ATF"), and
received a license to deal in firearms.

       Dick's was first inspected for compliance on June 2, 1992.  The inspector's report
cited numerous errors in record-keeping in the Acquisition and Distribution Book
(hereinafter "A & D Book") as well as errors in completing ATF Forms 4473.  The
inspector did not cite Dick's for any violations as a result of the initial inspection

because, according to the inspector, the errors found were clerical in nature, and Mr. Schmalzreid was cooperative with the investigation. The inspector also noted that he explained in depth to Mr. Schmalzreid and his employees the correct way to complete the A & D Book and Forms 4473. Finally, the inspector recommended a follow-up inspection within the next twenty-four months.

The next compliance inspection did not occur until September 30, 1998. The inspection officer cited Dick's for violations regarding improper completion of several Forms 4473, as well as errors in the A & D Book. The inspector also noted that a random sample of approximately 250 names were selected from Dick's customers and were submitted to TECS/NCIC/NLETS. As a result of the background check, three of the customers selected were discovered to be felons. According to the inspector's report, Mr. Schmalzreid received an explanation of the violations and was cooperative. As a result of the inspection, Dick's received a report of violations that explained the nature of the violations and the required corrective action. Mr. Schmalzreid acknowledged receipt of the report.

The next compliance inspection of Dick's occurred in January 2001. This inspection resulted in Dick's being cited for five violations. Dick's was again cited for failure to accurately complete the A & D book; in one instance Dick's failed to enter any information for the disposition of any firearm into the A & D Book for a three-month period. It was also noted that Dick's failed to record on Forms 4473 the type of identification received to verify the address of three customers who were legal aliens. Dick's also failed on nine separate occasions to report the sale of two or more handguns to a nonlicensee within the requisite period of five business days, and failed

-2-

because, according to the inspector, the errors found were clerical in nature, and Mr. Schmalzreid was cooperative with the investigation. The inspector also noted that he explained in depth to Mr. Schmalzreid and his employees the correct way to complete the A & D Book and Forms 4473. Finally, the inspector recommended a follow-up inspection within the next twenty-four months.

The next compliance inspection did not occur until September 30, 1998. The inspection officer cited Dick's for violations regarding improper completion of several Forms 4473, as well as errors in the A & D Book. The inspector also noted that a random sample of approximately 250 names were selected from Dick's customers and were submitted to TECS/NCIC/NLETS. As a result of the background check, three of the customers selected were discovered to be felons. According to the inspector's report, Mr. Schmalzreid received an explanation of the violations and was cooperative. As a result of the inspection, Dick's received a report of violations that explained the nature of the violations and the required corrective action. Mr. Schmalzreid acknowledged receipt of the report.

The next compliance inspection of Dick's occurred in January 2001. This inspection resulted in Dick's being cited for five violations. Dick's was again cited for failure to accurately complete the A & D book; in one instance Dick's failed to enter any information for the disposition of any firearm into the A & D Book for a three-month period. It was also noted that Dick's failed to record on Forms 4473 the type of identification received to verify the address of three customers who were legal aliens. Dick's also failed on nine separate occasions to report the sale of two or more handguns to a nonlicensee within the requisite period of five business days, and failed

-2-

to submit the appropriate forms to the ATF.  Dick's received a report of violations and certified that corrective action had been taken.  Mr. Schmalzreid acknowledged that the requirements of the Gun Control Act had been explained.

As a result of the 2001 inspection, Mr. Schmalzreid and his vice-president, Ron Westcott, attended a warning conference held by the ATF.  The cited violations and appropriate corrective action were again discussed.  Dick's was also warned that future violations may result in the revocation of its firearms license.

In 2002, Dick's was inspected again from June 3 until July 7.  The inspection resulted in Dick's being cited for nine violations.  Defendant listed these violations as:

     (I)      failure to file theft and loss reports, 18 U.S.C. § 923(g)(6);
     (ii)     unlawful transfer of firearms, 18 U.S.C. § 922(d)(6);
     (iii)    failure to provide Youth Handgun Safety Act notices, 18 U.S.C. § 922(x);
     (iv)    failure to comply with the firearms transfer requirements of the National Instant Check System (NICS), 18 U.S.C. §§ 922(m), 922(t)(1), and 922(g);
     (v)     false entries into the A & D Book, 18 U.S.C. § 922(m);
     (vi)    failure to accurately complete ATF Forms 4473, 18 U.S.C. § 922(g)(1)(A);
     (vii)   failure to properly maintain ATF Forms 4473, 18 U.S.C. § 922(g)(1)(A);
     (viii)  failure to properly record information in the acquisition and disposition records, 18 U.S.C. § 922(g)(1)(A); and
     (ix)    failure to report multiple sales of handguns, 18 U.S.C. § 922(g)(3)(A).

Citing the above violations, on May 14, 2003, the Director of Industry Operations (hereinafter "DIO") sent Dick's notice that its license was being revoked.

In response to the Notice of Revocation of License, Dick's requested an administrative hearing.  The hearing began on November 5, 2004 and lasted for two days.  Witnesses appeared and exhibits were taken into evidence.  After the hearing, the Hearing Officer recommended that the Dick's license be revoked for willfully failing to comply with the requirements of the Gun Control Act.  The only count rejected by the Hearing Officer was the charge that Dick's failed to provide Youth Handgun Safety Act

to submit the appropriate forms to the ATF.  Dick's received a report of violations and

certified that corrective action had been taken.  Mr. Schmalzreid acknowledged that the

requirements of the Gun Control Act had been explained.

As a result of the 2001 inspection, Mr. Schmalzreid and his vice-president, Ron

Westcott, attended a warning conference held by the ATF.  The cited violations and

appropriate corrective action were again discussed.  Dick's was also warned that future

violations may result in the revocation of its firearms license.

In 2002, Dick's was inspected again from June 3 until July 7.  The inspection

resulted in Dick's being cited for nine violations.  Defendant listed these violations as:

(I)      failure to file theft and loss reports, 18 U.S.C. § 923(g)(6);
(ii)     unlawful transfer of firearms, 18 U.S.C. § 922(d)(6);
(iii)    failure to provide Youth Handgun Safety Act notices, 18 U.S.C. § 922(x);
(iv)     failure to comply with the firearms transfer requirements of the National
         Instant Check System (NICS), 18 U.S.C. §§ 922(m), 922(t)(1), and 922(g);
(v)      false entries into the A & D Book, 18 U.S.C. § 922(m);
(vi)     failure to accurately complete ATF Forms 4473, 18 U.S.C. § 922(g)(1)(A);
(vii)    failure to properly maintain ATF Forms 4473, 18 U.S.C. § 922(g)(1)(A);
(viii)   failure to properly record information in the acquisition and disposition
         records, 18 U.S.C. § 922(g)(1)(A); and
(ix)     failure to report multiple sales of handguns, 18 U.S.C. § 922(g)(3)(A).

Citing the above violations, on May 14, 2003, the Director of Industry Operations

(hereinafter "DIO") sent Dick's notice that its license was being revoked.

In response to the Notice of Revocation of License, Dick's requested an

administrative hearing.  The hearing began on November 5, 2004 and lasted for two

days.  Witnesses appeared and exhibits were taken into evidence.  After the hearing,

the Hearing Officer recommended that the Dick's license be revoked for willfully failing

to comply with the requirements of the Gun Control Act.  The only count rejected by the

Hearing Officer was the charge that Dick's failed to provide Youth Handgun Safety Act

-3-

Notices.  Upon review of the Hearing Officer's recommendations, the DIO issued a Final

Notice of Revocation on September 30, 2004.  Pursuant to § 923(f)(2), Dick's requested

and received an administrative hearing regarding revocation of the federal firearms

license.  Dick's failed to persuade the Hearing Officer to find in its favor, and the DIO did

not change her position.  Dick's next maneuver was to file a petition with this Court

seeking judicial review of the administrative decision.[1]

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The

Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox

v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is

"whether the evidence presents a sufficient disagreement to require submission to a jury

---

[1] See 18 U.S.C. § 923(f)(3) ("If after a hearing held under paragraph (2) the
Secretary decides not to reverse his decision to deny an application or revoke a license,
the Secretary shall give notice of his decision to the aggrieved party.  The aggrieved
party may at any time within sixty days after the date notice was given under this
paragraph file a petition with the United States district court for the district in which he
resides or has his principal place of business for a de novo judicial review of such denial
or revocation.").

-4-

Notices.  Upon review of the Hearing Officer's recommendations, the DIO issued a Final

Notice of Revocation on September 30, 2004.  Pursuant to § 923(f)(2), Dick's requested

and received an administrative hearing regarding revocation of the federal firearms

license.  Dick's failed to persuade the Hearing Officer to find in its favor, and the DIO did

not change her position.  Dick's next maneuver was to file a petition with this Court

seeking judicial review of the administrative decision.[1]

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The

Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox

v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is

"whether the evidence presents a sufficient disagreement to require submission to a jury

---

[1] See 18 U.S.C. § 923(f)(3) ("If after a hearing held under paragraph (2) the
Secretary decides not to reverse his decision to deny an application or revoke a license,
the Secretary shall give notice of his decision to the aggrieved party.  The aggrieved
party may at any time within sixty days after the date notice was given under this
paragraph file a petition with the United States district court for the district in which he
resides or has his principal place of business for a de novo judicial review of such denial
or revocation.").

or whether it is so one-sided that one party must prevail as a matter of law." Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587; Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by the use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252.  Rather there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

**III.  Analysis**

A.  Applicable Law

Dick's claim is controlled by the Gun Control Act (hereinafter "GCA") codified at

or whether it is so one-sided that one party must prevail as a matter of law." Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587; Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by the use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

**III.  Analysis**

A.  Applicable Law

Dick's claim is controlled by the Gun Control Act (hereinafter "GCA") codified at

-5-

18 U.S.C. § 921, et seq.  As noted above, Dick's license was revoked for willfully failing to comply with the requirements of the GCA.  Section 923(e) provides that "[t]he Secretary may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Secretary under this chapter."

Of primary concern in the instant case is whether Dick's repeated violations constitute "willful" violations under the GCA.  The Sixth Circuit does not limit the definition of "willfulness" to acts or omissions done with a "bad purpose." "The majority of the circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." Appalachian Resources Development Corporation, d/b/a Bend of the River v. Harry L. McCabe, III, 387 F.3d 461, 464 (6th Cir. 2004) (citations omitted).  See also Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F. Supp. 2d 1299, 1312 (S.D. Ala. 2004) ("Courts have routinely found sufficient evidence of willfulness, as a matter of law, where a licensee engaged in repeated violations after being advised of recordkeeping defects by ATF inspectors on prior occasions.").   The Appalachian court also concluded that the inclusion of an element of bad purpose in the definition of willfully was unsupported by case law.  387 F.3d at 465.  A willful violation can be established by demonstrating that the charged party had knowledge of a legal obligation and either disregarded the obligation, or was indifferent to it.  See Id. at 465-66 (citation omitted).

A contrary reading of the standard of "willfulness" finds no support in the case

18 U.S.C. § 921, et seq.  As noted above, Dick's license was revoked for willfully failing

to comply with the requirements of the GCA.  Section 923(e) provides that "[t]he

Secretary may, after notice and opportunity for hearing, revoke any license issued

under this section if the holder of such license has willfully violated any provision of this

chapter or any rule or regulation prescribed by the Secretary under this chapter."

Of primary concern in the instant case is whether Dick's repeated violations

constitute "willful" violations under the GCA.  The Sixth Circuit does not limit the

definition of "willfulness" to acts or omissions done with a "bad purpose." "The majority

of the circuits, including the Sixth Circuit, have consistently held that where a licensee

understands his or her legal obligations under the GCA, yet fails to abide by those

obligations, his or her license can be denied or revoked on the basis that the dealer

'willfully' violated the GCA." Appalachian Resources Development Corporation, d/b/a

Bend of the River v. Harry L. McCabe, III, 387 F.3d 461, 464 (6th Cir. 2004) (citations

omitted).  See also Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and

Explosives, 348 F. Supp. 2d 1299, 1312 (S.D. Ala. 2004) ("Courts have routinely found

sufficient evidence of willfulness, as a matter of law, where a licensee engaged in

repeated violations after being advised of recordkeeping defects by ATF inspectors on

prior occasions.").   The Appalachian court also concluded that the inclusion of an

element of bad purpose in the definition of willfully was unsupported by case law.  387

F.3d at 465.  A willful violation can be established by demonstrating that the charged

party had knowledge of a legal obligation and either disregarded the obligation, or was

indifferent to it.  See Id. at 465-66 (citation omitted).

A contrary reading of the standard of "willfulness" finds no support in the case

law of this Circuit.  However, Dick's contends that a "willful" act must entail a bad purpose.  This argument was addressed in <u>Appalachian</u>; in that case the plaintiff likewise argued that a willful act must include a "<u>bad</u> <u>purpose</u> to disobey or disregard the law."  <u>Id.</u> at 464 (emphasis in original) (quoting <u>Bryan v. United States</u>, 524 U.S. 184, 190).  The <u>Appalachian</u> court found that according to the <u>Bryan</u> court, the "bad purpose" definition was generally used in criminal contexts.  <u>Id.</u> at 465 (citing <u>Bryan</u>, 524 U.S. at 191).  Furthermore, the <u>Appalachian</u> court noted that the <u>Bryan</u> court "acknowledge[d] that a 'disregard of a known legal obligation is sufficient to establish a willful violation[.]'"  <u>Id.</u> at 465 (quoting <u>Bryan</u> 524 U.S. at 197-98).  Based on the above recited standards, any argument that Dick's did not willfully violate the GCA when it had knowledge of the law and knowingly or indifferently failed to comply with the law has no merit.

In order to survive a motion for summary judgment, Dick's must establish that a genuine issue of material fact exists.  The court finds that Dick's has failed to meet its burden.  Because the ATF may revoke a license for a single violation, a party contesting revocation must establish that issues of material fact exist as to the violations that were cited in support of revocation.  <u>See</u> <u>3 Bridges, Inc. v. United States</u>. 216 F. Supp. 2d 655, 659 (E.D. Ky., 2002).  In that case the court found that where a plaintiff failed to contest all of the charges alleged, a material issue of fact was not presented because the ATF may revoke a license for a single violation.  <u>Id.</u> at 659 (quoting <u>DiMartino v. Buckles</u>, 129 F. Supp. 2d 824, 832 (D. Md. 2001)); <u>see</u> <u>also</u> <u>Willingham Sports</u>, 348 F. Supp. 2d at 1312.

This court finds that Dick's has raised a genuine issue of material fact in regard

-7-

law of this Circuit.  However, Dick's contends that a "willful" act must entail a bad purpose.  This argument was addressed in <u>Appalachian</u>; in that case the plaintiff likewise argued that a willful act must include a "<u>bad</u> <u>purpose</u> to disobey or disregard the law."  <u>Id.</u> at 464 (emphasis in original) (quoting <u>Bryan v. United States</u>, 524 U.S. 184, 190).  The <u>Appalachian</u> court found that according to the <u>Bryan</u> court, the "bad purpose" definition was generally used in criminal contexts.  <u>Id.</u> at 465 (citing <u>Bryan</u>, 524 U.S. at 191).  Furthermore, the <u>Appalachian</u> court noted that the  <u>Bryan</u> court "acknowledge[d] that a 'disregard of a known legal obligation is sufficient to establish a willful violation[.]'" <u>Id.</u> at 465 (quoting <u>Bryan</u> 524 U.S. at 197-98).  Based on the above recited standards, any argument that Dick's did not willfully violate the GCA when it had knowledge of the law and knowingly or indifferently failed to comply with the law has no merit.

    In order to survive a motion for summary judgment, Dick's must establish that a genuine issue of material fact exists.  The court finds that Dick's has failed to meet its burden.  Because the ATF may revoke a license for a single violation, a party contesting revocation must establish that issues of material fact exist as to the violations that were cited in support of revocation.  <u>See</u> <u>3 Bridges, Inc. v. United States</u>.  216 F. Supp. 2d 655, 659 (E.D. Ky., 2002).  In that case the court found that where a plaintiff failed to contest all of the charges alleged, a material issue of fact was not presented because the ATF may revoke a license for a single violation.  <u>Id.</u> at 659 (quoting <u>DiMartino v. Buckles</u>, 129 F. Supp. 2d 824, 832 (D. Md. 2001)); <u>see also</u> <u>Willingham Sports</u>, 348 F. Supp. 2d at 1312.

    This court finds that Dick's has raised a genuine issue of material fact in regard

to two of the nine counts charged in the Notice of Revocation.  First, Dick's has demonstrated that the "straw purchase" alleged in Count V may not have been a knowing violation.  Dick's has also demonstrated that the Hearing Officer failed to find for the ATF on Count III which involved a failure to provide information required by the Youth Handgun Safety Act.  However, even with genuine issues of material fact as to those two issues, given the repeat nature of other violations found by the ATF, and that the ATF may revoke a license for even a single willful violation, the court concludes that Dick's has failed to demonstrate that a denial of summary judgment is warranted.

In the present case Dick's admitted or failed to contest six out of nine counts listed in the Notice of Revocation which included eighteen separate violations.  Although authorized to do so, clearly in this case the ATF did not revoke the license for just one willful violation.  Most glaring is that during three prior inspections, as well as at a warning conference, Dick's was notified of continuing violations in regard to completion of ATF Forms 4473 as well as errors in completing the A & D Book.  Dick's was also made aware of a violation for multiple sales of handguns after the 2001 inspection and warning conference.  Even with prior notice and a warning that if record keeping did not improve Dick's would face revocation, Dick's failed to take the necessary corrective action to ensure that the violations stopped.  Although Dick's characterizes the book keeping errors as "minor" and "harmless," courts that have reviewed these types of violations do not agree.  In Willingham Sports, the court said:

> It is not the place of Willingham . . . to decide unilaterally which federal firearms regulations are sufficiently important to follow and which may be disregarded as "nit-picky."  Nothing in the Gun Control Act or the accompanying regulations exonerates licensees from complying with "nit-picky" rules or trammels the ATF's authority to revoke licenses for willful violations of "nit-picky" rules.

-8-

to two of the nine counts charged in the Notice of Revocation.  First, Dick's has demonstrated that the "straw purchase" alleged in Count V may not have been a knowing violation.  Dick's has also demonstrated that the Hearing Officer failed to find for the ATF on Count III which involved a failure to provide information required by the Youth Handgun Safety Act.  However, even with genuine issues of material fact as to those two issues, given the repeat nature of other violations found by the ATF, and that the ATF may revoke a license for even a single willful violation, the court concludes that Dick's has failed to demonstrate that a denial of summary judgment is warranted.

In the present case Dick's admitted or failed to contest six out of nine counts listed in the Notice of Revocation which included eighteen separate violations.  Although authorized to do so, clearly in this case the ATF did not revoke the license for just one willful violation.  Most glaring is that during three prior inspections, as well as at a warning conference, Dick's was notified of continuing violations in regard to completion of ATF Forms 4473 as well as errors in completing the A & D Book.  Dick's was also made aware of a violation for multiple sales of handguns after the 2001 inspection and warning conference.  Even with prior notice and a warning that if record keeping did not improve Dick's would face revocation, Dick's failed to take the necessary corrective action to ensure that the violations stopped.  Although Dick's characterizes the book keeping errors as "minor" and "harmless," courts that have reviewed these types of violations do not agree.  In Willingham Sports, the court said:

> It is not the place of Willingham . . . to decide unilaterally which federal firearms regulations are sufficiently important to follow and which may be disregarded as "nit-picky."  Nothing in the Gun Control Act or the accompanying regulations exonerates licensees from complying with "nit-picky" rules or trammels the ATF's authority to revoke licenses for willful violations of "nit-picky" rules.

-8-

348 F.Supp.2d at 1309.  The <u>Willingham Sports</u> court reasoned that "the gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint, and a safety standpoint militates in favor of allowing the ATF to insist on total compliance as a condition of retaining a the privilege of dealing in firearms."  <u>Id.</u> at 1309 n.14.  Firearms dealers must comply with applicable regulations in order to promote community safety; failure to comply with exacting book keeping regulations may hinder the ATF's ability to perform its mandated function.  <u>Id.</u>  In the instant case, Dick's had multiple warnings concerning its attempted failure to accurately maintain records;  Dick's indifference to the gravity of its deficiencies hindered the ATF's ability to perform its mandate.

B.  Dick's Arguments

Aside from arguing that the DIO revoked its license based on an inappropriate interpretation of the law, Dick's attempts to call into question two other issues in order to avoid summary judgment.  First, Dick's contends that the lack of a complete record of the administrative hearing is fatal to defendant's motion for summary judgment.  Second, Dick's claims that various charges are time barred by a statute of limitations.

1.  Lack of Administrative Record

A complete Administrative transcript is not necessary for this court to decide a motion for summary judgment.   Pursuant to 18 U.S.C. § 923(f)(3), this court exercises de novo review over petitions contesting the revocation of a license to sell firearms.  Plaintiff is not bound by the administrative record and may present additional evidence.  18 U.S.C. § 923(f)(3) ("In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding, whether or not such

-9-

348 F.Supp.2d at 1309.  The Willingham Sports court reasoned that "the gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint, and a safety standpoint militates in favor of allowing the ATF to insist on total compliance as a condition of retaining a the privilege of dealing in firearms."  Id. at 1309 n.14.  Firearms dealers must comply with applicable regulations in order to promote community safety; failure to comply with exacting book keeping regulations may hinder the ATF's ability to perform its mandated function.  Id.  In the instant case, Dick's had multiple warnings concerning its attempted failure to accurately maintain records;  Dick's indifference to the gravity of its deficiencies hindered the ATF's ability to perform its mandate.

B.  Dick's Arguments

Aside from arguing that the DIO revoked its license based on an inappropriate interpretation of the law, Dick's attempts to call into question two other issues in order to avoid summary judgment.  First, Dick's contends that the lack of a complete record of the administrative hearing is fatal to defendant's motion for summary judgment.  Second, Dick's claims that various charges are time barred by a statute of limitations.

1.  Lack of Administrative Record

A complete Administrative transcript is not necessary for this court to decide a motion for summary judgment.   Pursuant to 18 U.S.C. § 923(f)(3), this court exercises de novo review over petitions contesting the revocation of a license to sell firearms.  Plaintiff is not bound by the administrative record and may present additional evidence.  18 U.S.C. § 923(f)(3) ("In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding, whether or not such

-9-

evidence was considered at the hearing.").  Lack of a complete Administrative Record is

not fatal to defendant's motion for summary judgment because pursuant to § 923(f)(3),

this court is not bound by the administrative record.  In this case, Dick's still had the

opportunity to present evidence by way of affidavits and transcripts of depositions in

order to demonstrate existing genuine issues of material fact.  In fact Dick's did present

affidavit evidence to demonstrate genuine issues of material fact in connection with two

of the counts cited.  It is significant that Dick's failed to present any evidence

challenging  the other violations found in the Notice of Revocation.

       2.  Statute of limitations

Plaintiff's reliance on the statute of limitations as a defense is misplaced

inasmuch as the court finds it inapplicable to the present case.  Dick's argues that the

five-year statute of limitations at 28 U.S.C. § 2462 bars the defendant from charging

Dick's with any violations that were discovered during the 1992 and 1998 inspections.

Section 2462 applies to civil forfeiture actions.  Dick's has not provided, nor has the

court found a single instance where the above-mentioned statute has been applied to

Federal Firearms License revocations.  Even if the statute of limitations were applicable

in the present case, the license was revoked pursuant to allegations uncovered and

charged during the 2002 inspection, not allegations pertaining to the 1992 or 1998

inspections.  Defendant did not seek revocation based on the 1992 or 1998 violations,

but rather used Dick's past regulatory history to establish that the later violations were

willful.  In determining whether a violation of the GCA was willful, past violations

demonstrate that the party charged had knowledge of the applicable law at the time of

the subsequent violation.  3 Bridges, Inc., 216 F. Supp. 2d. at 659.  Moreover, even if

-10-

evidence was considered at the hearing.").  Lack of a complete Administrative Record is not fatal to defendant's motion for summary judgment because pursuant to § 923(f)(3), this court is not bound by the administrative record.  In this case, Dick's still had the opportunity to present evidence by way of affidavits and transcripts of depositions in order to demonstrate existing genuine issues of material fact.  In fact Dick's did present affidavit evidence to demonstrate genuine issues of material fact in connection with two of the counts cited.  It is significant that Dick's failed to present any evidence challenging  the other violations found in the Notice of Revocation.

        2.  Statute of limitations

Plaintiff's reliance on the statute of limitations as a defense is misplaced inasmuch as the court finds it inapplicable to the present case.  Dick's argues that the five-year statute of limitations at 28 U.S.C. § 2462 bars the defendant from charging Dick's with any violations that were discovered during the 1992 and 1998 inspections.  Section 2462 applies to civil forfeiture actions.  Dick's has not provided, nor has the court found a single instance where the above-mentioned statute has been applied to Federal Firearms License revocations.  Even if the statute of limitations were applicable in the present case, the license was revoked pursuant to allegations uncovered and charged during the 2002 inspection, not allegations pertaining to the 1992 or 1998 inspections.  Defendant did not seek revocation based on the 1992 or 1998 violations, but rather used Dick's past regulatory history to establish that the later violations were willful.  In determining whether a violation of the GCA was willful, past violations demonstrate that the party charged had knowledge of the applicable law at the time of the subsequent violation.  3 Bridges, Inc., 216 F. Supp. 2d. at 659.  Moreover, even if

-10-

applicable, the statute of limitations would only bear on one allegation related in Count I: failure to report the theft five firearms in 1994 and 1995.  Notwithstanding this violation, as noted above the ATF has the power to revoke a license for even a single violation. For that reason, even if found applicable, section 2462 would not avoid summary judgment.

## IV.  Conclusion

For the reasons stated above, the court hereby GRANTS the defendant's motion for summary judgment.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 29, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

applicable, the statute of limitations would only bear on one allegation related in Count I: failure to report the theft five firearms in 1994 and 1995.  Notwithstanding this violation, as noted above the ATF has the power to revoke a license for even a single violation. For that reason, even if found applicable, section 2462 would not avoid summary judgment.

## IV.  Conclusion

For the reasons stated above, the court hereby GRANTS the defendant's motion for summary judgment.

                              S/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2006

                         CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 29, 2006, by electronic and/or ordinary mail.

                              S/Josephine Chaffee
                              Secretary/Deputy Clerk

-11-